**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| KEEP CHICAGO LIVABLE, an | ) | |
| Illinois not-for-profit corporation, and | ) | |
| BENJAMIN THOMAS WOLF, | ) | NO.    1: 16-cv-10371 |
| SUSAN MALLER, DANIELLE | ) | |
| MCCARRON, ANTOINETTE | ) | |
| WONSEY,MONICA WOLF and JOHN | ) | |
| DOE, individuals, | ) | |
| | ) | Hon. Judge Sara Ellis |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **AMENDED COMPLAINT** |
| | ) | |
| | ) | |
| THE CITY OF CHICAGO, a | ) | |
| Municipal corporation, | ) | |
| | ) | |
| Defendant. | ) | |

**AMENDED COMPLAINT
FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF,**

NOW COME plaintiffs KEEP CHICAGO LIVABLE, a 501(c)(3) Illinois not-for-profit

corporation ("KCL") and five individuals: BENJAMIN THOMAS WOLF ("Benjamin"), SUSAN

MALLER ("Susan"), DANIELLE MCCARRON ("Danielle"), ANTOINETTE WONSEY

("Antoinette"), MONICA WOLF ("Monica") and JOHN DOE ("Doe", and together with KCL,

Benjamin, Susan, Danielle, Antoinette and Monica, "Plaintiffs"), by and through their undersigned

attorneys, and complain of and seek declaratory judgment and injunctive relief against defendant THE

CITY OF CHICAGO, a municipal corporation ("Defendant" or the "City"), as follows:

**INTRODUCTION**

1.    On June 22, 2016, the Chicago City Council passed an ordinance amending Titles

2, 3, 4 and 17 of the Municipal Code regarding Shared Housing Units and Vacation rentals (as

amended, the "Shared Housing Ordinance"). A true and correct copy of the original version of this law is attached hereto as ***Exhibit 1***.

2.   On December 13, 2016, this Honorable Court entered an Agreed Order staying the effective date of certain portions of the Shared Housing Ordinance from December 17, 2016 to February 28, 2017 or such other date as this Honorable Court might fix. [Dkt. No. 19].

3.   In response to this lawsuit, on December 14, 2016, Mayor Rahm Emanuel proposed and an amendment to the Shared Housing Ordinance.

4.   Notwithstanding the stay, on or about January 13, 2017, the City of Chicago compiled and published a "Prohibited Buildings List."   Over 1,000 buildings and 100,000 apartments and condominium units are subject to this "Prohibited Buildings List."

5.   On February 22, 2017, the Chicago City Council passed an amended version of the proposed amendment to the Shared Housing Ordinance.   A true and correct copy of this Substitute Ordinance amendment is attached hereto as ***Exhibit 2.***

6.   As set forth in the original Complaint and motion for preliminary injunction, the Shared Housing Ordinance constitutes an unconstitutional burden on the rights of ordinary Chicagoans to speak or to not speak, by requiring them to register with the government and agree to onerous conditions before they can communicate a simple message on the internet: "Guests welcome." The Shared Housing Ordinance also unconstitutionally compels certain non-factual and/or controversial statements to be made by hosts, and unequally discriminates against the content of Airbnb hosts' speech based on their status as shared housing hosts.

7.   Further, the Shared Housing Ordinance unconstitutionally infringes upon the First Amendment rights of intimate and expressive association of Airbnb hosts and guests.

8.   Plaintiffs Monica and Doe are not Chicago residents. Instead, they are visitors to Chicago

who, for their own reasons, use Airbnb to discover local culture as seen through the eyes and experiences of actual Chicago residents. The "Prohibited Buildings List" and the ban on alcohol and effective ban on food directly and substantially burdens their fundamental rights to intimate or private association with local Chicagoans, and is therefore facially unconstitutional.

9.    Plaintiff Antoinette Wonsey exemplifies the significant burden that this law places upon her fundamental right to expressive association. She uses Airbnb to invite guests to the much-maligned neighborhood of Englewood, on the South Side of Chicago, to engage in a form of political speech, by having the guests see for themselves what living in that neighborhood is actually like. Similarly, plaintiff Benjamin Thomas Wolf, the President of Keep Chicago Livable, a candidate for the United States House of Representatives and a a Ph.D candidate in international psychology, uses Airbnb to further his own rights to expressive association as he would like to use his association with Airbnb guests to further these protected First Amendment activities.

10.    Additionally, the Shared Housing Ordinance draws unconstitutional distinctions between individuals who operate "shared housing units" and corporations who own and operate "guest suites" and "hotels" – even though both technically "sell" the same "product" and engage in the same conduct.

11.    The Shared Housing Ordinance does not "level the playing field" between individuals and corporations, or subject individuals to the same general licensing requirements mandated for hotels and luxury high rises. This law actively targets and discriminates against a politically insular community – Airbnb hosts – and puts burdens and bans upon them that no commercial operator of a hotel or luxury high rise must bear. Thus, the City must meet more than a rational basis standard.

12.    The following summary table details the grossly unequal burdens placed upon shared housing hosts as compared to the corporate owners and operators of "guest suites" and "hotels":

| | Shared Housing Unit | Guest Suite | Hotel | Reference |
|---|---|---|---|---|
| Provides "Hotel Accommodations" | ☒ | ☒ | ☒ | 3-24-020(A)(4) |
| Per Unit Licensing Fee | **$60[1]** | **$0** | **$2.20[2]** | 4-5-010(36) |
| 17.4% Hotel Operator Occupancy Tax | ☒ | ☐ | ☒ | 3-24-030(A) |
| 4.0% Additional Surcharge[3] | ☒ | ☐ | ☐ | 3-24-030(B) |
| Registration / License Required | ☒ | ☐ | ☒ | 4-14-020(a) |
| Must be Natural Person | ☒ | ☐ | ☐ | 4-14-020(b)(1) 4-13-260(a)(8) |
| Attestation required to advertise on internet | ☒ | ☐ | ☐ | 4-14-020(c) |
| Annual Registration review | ☒ | ☐ | ☐ | 4-14-020(h) 4-13-260(a) |
| Required information must be in listing | ☒ | ☐ | ☐ | 4-14-020(f) 4-14-040(a) 4-14-040(b)(4) |
| Required police reporting on mere suspicion of Guests' criminal activity[4] | ☒ | ☐ | ☐ | 4-14-040(b)(3) 4-14-050(a) |
| Alcohol prohibited | ☒ | ☐ | ☐ | 4-14-050(d) |
| Maximum occupancy restrictions[5] | ☒ | ☐ | ☐ | 4-14-050(b) |
| Unamplified noise (i.e., conversational noise) restrictions | ☒ | ☐ | ☐ | 4-14-080(c)(2) |
| Liability for off-premises behavior by guests | ☒ | ☐ | ☐ | 4-14-080(c)(2) 4-14-080(c)(3) |
| Duration of license/registration revocation | **2 years** | **N/A** | **1 year** | 4-14-090(d) 4-6-180(f)(2) |
| Min / Max Penalties for Violation (per day | **$1,500 / $3,000 $2,500 / $5,000 for ineligibility** | **N/A** | **$250 / $500** | 4-14-060(g) 4-14-090(a) 4-4-010 4-6-180(f)(1) |

---

[1]  Paid for by intermediaries such as Airbnb.   Estimated annual fee: $300,000 (assuming 5,000 units).

[2]  In Chicago, hotels are required to pay a $185 per establishment licensing fee every two years.

[3]  Estimated by City to raise $2 million per year, ostensibly for the homeless.

[4]  Business licensee are required to report what they are actually told or observe. Chi. Mun. Code 4-4-306. Hotels can only be held liable if they "knowingly permit" crime in units, and have an affirmative defense if they report. Chi. Mun Code   4-6-180(e)(2).

[5]  Shared Housing Units have an "absolute maximum" occupancy limit of 1 person per 125 square feet. By comparison, under Chi. Mun. Code 13-196-480, residential family units require 125 square feet for the first **two** occupants, and at least 100 sq. ft. for the next two occupants, and 75 sq. ft. for each additional occupant.   There is no maximum occupancy limit for hotel rooms or guest suites.

## PARTIES, JURISDICTION AND VENUE

13.     Plaintiff KEEP CHICAGO LIVABLE is a 501(c)(3) Illinois not-for-profit corporation, formed by hosts, for hosts, and made up of hosts.

14.     The purpose of Keep Chicago Livable is to educate other Chicago owners and renters as to their rights and duties to participate in home sharing and to assist them with compliance with both state and local law as well as internally developed "best practices" for responsible home sharing and assist homeowners with compliance with applicable regulations.

15.     Plaintiff BENJAMIN THOMAS WOLF is an individual citizen of the State of Illinois who resides in the City of Chicago, Cook County, State of Illinois. Benjamin is the President of Keep Chicago Livable and a candidate for election to the United States House of Representatives.

16.     Benjamin has participated on Airbnb as a host and/or as a guest from time to time since 2012, and owns property in the City of Chicago that he either has used in the past for Airbnb purposes or that he intends to use for such purposes in the future.

17.     Plaintiff SUSAN MALLER is an individual citizen of the State of Illinois who resides in the City of Chicago, Cook County, State of Illinois.

18.     Susan rents an apartment at the Atwater Apartments, 355 E. Ohio Street, Chicago, Cook County, Illinois, and would like to participate on Airbnb, but cannot due to harassment by her building's property manager. The Atwater Apartments also advertises and operates a "guest suite," which is entirely exempt from regulation.

19.     Plaintiff DANIELLE MCCARRON is an individual citizen of the State of Illinois who resides in the City of Chicago, Cook County, State of Illinois.

20.     Danielle was a tenant at Hubbard Place, 360 W. Hubbard Street, in Chicago, Cook County, Illinois. Danielle would have liked to participate on Airbnb, but Hubbard Place is on the

City's "Prohibited Buildings List."

21.     Plaintiff ANTOINETTE WONSEY is an individual citizen of the State of Illinois who resides in a home in the Englewood neighborhood of Chicago.

22.     Antoinette is an Airbnb host manager who helps find guests accommodations in her much-maligned neighborhood for transient visits. Antoinette believes there is no better way to change hearts and minds than to have her guests actually see Englewood for themselves (with her guidance) and learn that there is a different side to the neighborhood other than that which has been portrayed.

23.     Plaintiff MONICA WOLF is a citizen of the Commonwealth of Kentucky who currently resides in Louisville, Kentucky.

24.     Monica is a bourbon consultant who travels to Chicago for personal and professional reasons, and uses Airbnb as a guest to meet new friends, to understand local tastes and preferences, and to further her passion for bourbon.   Monica prefers to stay in the downtown area to be close to her conferences. Monica is directly and substantially burdened by the "prohibited buildings list" prohibition on the service or provision of alcohol in Section 4-14-050(d) of the Shared Housing Ordinance.

25.     Plaintiff JOHN DOE is the pseudonym for a foreign national for Canada, who is a Chartered Accountant. DOE would like to move to Chicago – specifically to the downtown area - and has used Airbnb in the past to meet new friends, learn about different buildings and neighborhoods and to "scout" for the perfect apartment or condominium. Due to Doe's pending visa status, however, Doe wishes to remain anonymous for the purpose of this lawsuit (although may be willing to disclose his name under seal).

26.     The City of Chicago is a municipal corporation in the State of Illinois.

27.     Plaintiffs institute these proceedings and invokes the jurisdiction of this Court under

and by virtue of 28 U.S.C. § 1331, 28 U.S.C § 1343(a)(3), 28 U.S.C. § 1367(a), 28 U.S.C. § 2201(a), and 42 U.S.C. § 1983, because Plaintiffs seek a declaratory judgment as to the meaning of the Shared Housing Ordinance, to the extent any comprehensible meaning can be ascertained, and its constitutionality, under the United States Constitution and the Illinois Constitution of 1970.

28.     Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b) because all parties reside in this judicial district.

## BACKGROUND FACTS

29.     Airbnb is the world's most popular internet home sharing service.

30.     Airbnb serves as a platform that facilitates a social interaction between a host and a guest to arrange for a stay within a host's own home.

31.     Sites such as Airbnb are membership or subscriber-based sites, where transactions can only occur between a person and Airbnb if the putative members (both host and guest) agree to Airbnb's Terms of Service (*see* http://www.airbnb.com/terms). There is no up-front or periodic charge to join Airbnb as a member, either as a host or a guest.

32.     A substantial part of Airbnb's popularity has been the result of its assiduous cultivation of a sense of community among its members, who were all attracted to Airbnb's marketing message of "Live Like a Local."

33.     Airbnb has the deepest and broadest pool of vetted and insured "guests" and reliable "hosts" who share the community's norms and values.

34.     Airbnb members share a set of norms and values about traveling, hospitality and being a welcoming host or a courteous guest, that differ from the travel industry norm: (1) Airbnb members prefer to immerse themselves in a local culture over consuming pre-packaged and common tourist experiences; (2) Airbnb members prefer more "authentic" or humble accommodations that reflect

how locals actually live over five-star luxury amenities; (3) Airbnb members prefer to frequent host-recommended establishments, places or experiences over more critically acclaimed or nationally or internationally renowned places, in order to develop a closer personal bond to the host; (4) Airbnb members do not believe in getting something for nothing – or "freeloading" – and are happy to return a show of hospitality with a gift or some consideration; and (5) Airbnb members believe it to be rude to treat a show of hospitality as if it were an impersonal, arms-length commercial transaction. These shared norms and values are transmitted through the actual act of hosting and being a guest through Airbnb with experienced members.

35.     It is impossible for a host to create a listing on Airbnb – and thus, impossible for a person wishing to host a guest from this deep, vetted and insured guest pool – without including and maintaining a price term. Accordingly, the ability of a host to meet a guest from this deep, insured, globally popular guest pool is inextricably intertwined with the communication of a price term through an Airbnb listing.

36.     While basic information about "listings" can be viewed by non-members (or members of the general public), such "listings" do not reveal the full name of the host, contact information for the host, or the address of the space. Additionally, non-members cannot communicate with the host without requesting to book, and prior to the host accepting such request.

37.     It is thus impossible for a "guest" to communicate with a "host" through Airbnb without first "requesting a booking" that includes the communication of a money offer.  Thus, the ability of a guest to associate with a host from this deep and vetted "host pool" on Airbnb is also inextricably intertwined with the communication of a money offer.

38.     The primary purpose for many hosts on platforms such as Airbnb is not necessarily to obtain a profit. Hosts enjoy sharing their homes with guests for many reasons that have nothing to do

with making a profit, such as making new friends, learning about different cultures, showing off one's home and city to a newcomer or simply out of empathy for a traveler who could not otherwise afford to stay in a downtown hotel.

39.     An Airbnb listing has inherent value to a host, independent to its booking value. Airbnb provides a simple and easily accessible platform for a person to post pictures of and information about their space (and Airbnb even provides a free professional photographer), and Airbnb provides market data, in the form of suggestions as to pricing recommendations that are variable according to the season, neighborhood and demand. Additionally, an active "host listing" can serve as valuable reputational currency for a person who intends on using Airbnb as a guest, because hosts typically like to provide hospitality to other fellow hosts.

40.     There are also many non-commercial reasons that a guest might browse Airbnb listings, without intending to actually book a room. For example, a visitor to a new city could focus on particular neighborhoods and view actual homes in that neighborhood to get information about market prices, local hotspots, and even to glean aesthetic design or lifestyle information.

## COUNT I

## DECLARATORY JUDGMENT
## FIRST AMENDMENT – PRIOR RESTRAINT ON FULLY PROTECTED SPEECH

41.     Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 40 as if fully set forth herein.

42.     The First Amendment to the United States Constitution provides that "Congress shall make no law … abridging the freedom of speech, or of the press." The prohibitions in the First Amendment have been applied to states and localities through the Due Process Clause of the Fourteenth Amendment to the United States Constitution, and under the "incorporation doctrine."

43.     It is well-settled that prior restraints on non-commercial speech are typically

unconstitutional, with some very narrow and inapplicable exceptions.

44.     The Shared Housing Ordinance operates in substantial part by requiring all persons who wish to post and maintain a listing for a "Shared Housing Unit" to first register and obtain a registration number, where such registration includes disclosure to the City of the person's identifying information and subjects such registrant to a wide variety of restrictions and rules, including a commitment to serve as a "public accommodation" for anyone interested in being a guest in the person's private home.

45.     Absent such registration, the Shared Housing Ordinance empowers the City to order that a listing for a "Shared Housing Unit" be removed and to subject a person with such a listing to daily fines of up to $3,000 per day that the listing remains on the internet.

46.     By making registration a pre-requisite to posting and maintaining a listing for a "Shared Housing Unit" on sites such as Airbnb, the City is directly targeting and creating a prior restraint on non-commercial speech, or non-commercial speech that is inextricably intertwined with commercial speech, and thereby limits a fully protected social interaction between host and guest.

47.     The registration requirement for "Shared Housing Units" under the Shared Housing Ordinance censors, chills and penalizes a significant amount of primarily noncommercial speech, denies a free exchange of information to consumers of information, and is not narrowly tailored to advance a compelling State interest.

48.     There is a substantial and continuing controversy between plaintiff KEEP CHICAGO LIVABLE and the CITY OF CHICAGO as to the constitutionality and thus enforceability of material portions of the Shared Housing Ordinance. KEEP CHICAGO LIVABLE is unable to perform its function of educating and advising hosts and putative hosts as to their proper rights and duties under this new law, while the aforementioned constitutional questions remain unresolved.   This injury can

be redressed by the requested relief of a declaratory judgment.

49.     There is also a substantial and continuing controversy between plaintiff BENJAMIN THOMAS WOLF, SUSAN MALLER, DANIELLE MCCARRON and ANTOINETTE WONSEY, on the one hand, and the CITY OF CHICAGO, on the other, as to the constitutionality and thus enforceability of material portions of the Shared Housing Ordinance. Benjamin, Susan, Danielle and Antoinette are unable to know how and to what extent they are required to comply with the aforementioned provisions of the Shared Housing Ordinance, while the aforementioned constitutional questions remain unresolved.

50.     This injury can be redressed by the requested relief of a declaratory judgment.

WHEREFORE, Plaintiffs KEEP CHICAGO LIVABLE, BENJAMIN THOMAS WOLF, SUSAN MALLER, DANIELLE MCCARRON and ANTOINETTE WONSEY respectfully request and pray for a declaratory judgment that (1) the provisions of the Shared Housing Ordinance pertaining to registration of Shared Housing Units, including but not limited to the amendments or changes to Sections 2-25050(b)(10), 4-6-180(a), 4-6-290(a) of the Chicago Municipal Code, and the relevant portions (or the entirety) of Chapters 4-13, 4-14 and 4-16 of the Shared Housing Ordinance, be deemed unconstitutional, stricken and deemed void and unenforceable *ab initio*, that injunctive relief be entered against the City of Chicago from enforcing these provisions, that reasonable attorneys' fees and costs be awarded as authorized under 42 U.S.C. 1988, and for such other and further relief as is just and equitable.

## COUNT II

## DECLARATORY JUDGMENT
## FIRST AMENDMENT – COMPELLED SPEECH

51.     Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 40 as if fully set forth herein.

52.     Even if the mere posting of a listing on Airbnb is deemed "commercial speech" such that the registration requirement is not prohibited as an unconstitutional prior restraint on free speech, the Shared Housing Ordinance violates the First Amendment because it compels speech that is nonfactual and/or controversial and for a purpose other than to protect consumers.

53.     The Shared Housing Ordinance contains numerous provisions that require hosts to include information in their listing that has no consumer protection function and that requires a host to attest to non-factual opinions with which a person might reasonably disagree.

54.     First, the requirement that all listings contain license or registration numbers serves no substantial consumer protection function. The sole or primary purpose of the license number listing requirement is to reduce the administrative cost of enforcement for the City.

55.     Hosts are subject to harassment and illegal behavior from neighbors and from the City of Chicago itself when they lose their anonymity, which registration would force them to do. Accordingly, the mere listing of a publicly available registration number that ties back to public records about their name and address is controversial.

56.     Further, no consumer protection benefit is served by the public disclosure of registration numbers on Airbnb listings.  The only "consumers" with an interest in learning the identity of a host and the location of the accommodation are those consumers who have submitted a "Request to Book" and whose invitation has been accepted. However, at the time a "request" is "accepted" and a booking confirmed, Airbnb fully discloses the name, address and contact information for the host (and the full name and contact information of the guest) to each member, making the information traceable to a registration entirely redundant.

57.     Further, because the Shared Housing Ordinance requires Airbnb to "bulk register" all information that a host has shared with it to the City, to the extent that a host's Airbnb listing contains

false information, the City's records will also contain the exact same (false) information, making the public disclosure of a registration number useless from a consumer protection standpoint.

58.     Second, the requirement in 4-14-040(b)(3) and 4-14-050(a) that shared housing hosts affirmatively report their own guests to the police if the host "suspects" that the guest is engaging in criminal or illegal activity is unconstitutional compelled speech because it (a) compels the host to disclose the host's opinion (or suspicion) about what the guest is doing and whether it is illegal or not and (b) is obviously controversial in the sense that because the guest is staying within the host's own private home, the host – by reporting the suspected criminal activity – is putting himself or herself or his or her home in danger from a guest who will understandably be upset to be questioned by the police because the host reported the guest.

59.     Third, the amended attestation requirement still constitutes the compelled rendering of an opinion, because it requires a host to sign under penalty of law an acknowledgement with which the host could reasonably disagree. Specifically, the new "acknowledgement" is that "the listing, renting and operation of shared housing units is subject to those requirements." Because this lawsuit is currently subject to two separate lawsuits challenging its constitutionality, and because if found unconstitutional in whole or in part the Shared Housing Ordinance would be deemed to be null and void *ab initio*, a person could reasonably disagree with the City's opinion that the listing, renting and operation of shared housing units is currently or will ever be subject to those requirements.

60. The City of Chicago lacks a compelling or substantial state interest in infringing upon Plaintiffs' freedom to not speak in these respects.

61. The Shared Housing Ordinance does not directly advance the City of Chicago's governmental interest, and is not narrowly tailored or the least restrictive method of achieving that interest.

62.     There is a substantial and continuing controversy between plaintiff KEEP CHICAGO LIVABLE and the CITY OF CHICAGO as to the constitutionality and thus enforceability of material portions of the Shared Housing Ordinance.   KEEP CHICAGO LIVABLE is unable to perform its function of educating and advising hosts and putative hosts as to their proper rights and duties under this new law, while the aforementioned constitutional questions remain unresolved.   This injury can be redressed by the requested relief of a declaratory judgment.

63.     There is also a substantial and continuing controversy between plaintiffs BENJAMIN THOMAS WOLF, SUSAN MALLER, DANIELLE MCCARRON and ANTOINETTE WONSEY, on the one hand, and the CITY OF CHICAGO, on the other hand, as to the constitutionality and thus enforceability of material portions of the Shared Housing Ordinance. Benjamin, Susan and Antoinette and other present and future hosts are unable to know how and to what extent they are required to comply with the aforementioned provisions of the Shared Housing Ordinance, while the aforementioned constitutional questions remain unresolved.

64.     This injury can be redressed by the requested relief of a declaratory judgment

WHEREFORE, Plaintiffs KEEP CHICAGO LIVABLE, BENJAMIN THOMAS WOLF, SUSAN MALLER, DANIELLE MCCARRON and ANTOINETTE WONSEY respectfully request and pray for a declaratory judgment that the following provisions of the Shared Housing Ordinance be stricken as unconstitutional, unenforceable and void *ab initio* in violation of the First Amendment: Chicago Municipal Code Sections 4-6-290(a)(7), 4-6-290(a)(8)(i), 4-6-300(b)(5), 4-6-300(b)(6), 4-6-300(b)(7), 4-6-300(b)(9), 4-6-300(b)(10), 4-6-300(c)(10), 4-6-300(f)(4), 4-6-300(f)(7), 4-6-300(f)(8), 4-6-300(f)(10), 4-6-300(h)(1), 4-6-300(h)(3), 4-6-300(h)(9), 4-6-300(h)(10), 4-6-300(h)(11), 4-13-260(a), 4-14-020(a), 4-14-020(b)(6), 4-14-020(c)(1), 4-14-020(c)(2), 4-14-020(d), 4-14-020(f), 4-14-020(g), 4-14-020(h), 4-14-030(a), 4-14-040(a)(4), 4-14-040(b)(3), 4-14-040(b)(4), 4-14-040(b)(6), 4-

14-040(b)(8), and 4-14-040(b)(9), and that injunctive relief be entered against the City of Chicago from enforcing these provisions, that reasonable attorneys' fees and costs be awarded as authorized under 42 U.S.C. 1988, and for such other and further relief as is just and equitable.

**COUNT III**

**DECLARATORY JUDGMENT**
**FIRST AMENDMENT – CONTENT-BASED DISCRIMINATION**

65. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 40 as if fully set forth herein.

66. The First Amendment prohibits viewpoint and content-based discrimination against particular speakers or speech.

67. The Shared Housing Ordinance violates the First Amendment because it constitutes impermissible "content-based" discrimination against the message, "for short term occupancy, private room" as communicated on the internet (through intermediaries such as Airbnb) upon the most popular channels where eager recipients of that message may be found.

68. The Shared Housing Ordinance constitutes viewpoint- or speaker-based discrimination that is impermissible under the First Amendment because it unfairly targets and burdens *individual* speakers of this message as opposed to corporate or commercial speakers, who are allowed to communicate that same "for short term occupancy, private room" message for their own properties.

69. The City has no compelling interest for discriminating between these messages or speakers, and this law is not narrowly tailored to directly advance that interest.

70. There is a substantial and continuing controversy between plaintiff KEEP CHICAGO LIVABLE and the CITY OF CHICAGO as to the constitutionality and thus enforceability of material portions of the Shared Housing Ordinance.  KEEP CHICAGO LIVABLE is unable to perform its function of educating and advising hosts and putative hosts as to their proper rights and duties under

this new law, while the aforementioned constitutional questions remain unresolved.   This injury can be redressed by the requested relief of a declaratory judgment.

71. There is also a substantial and continuing controversy between plaintiffs BENJAMIN THOMAS WOLF, SUSAN MALLER, DANIELLE MCCARRON and ANTOINETTE WONSEY, on the one hand, and the CITY OF CHICAGO, on the other hand, as to the constitutionality and thus enforceability of material portions of the Shared Housing Ordinance. Benjamin, Susan, Danielle and Antoinette and other present and future hosts are unable to know how and to what extent they are required to comply with the aforementioned provisions of the Shared Housing Ordinance, while the aforementioned constitutional questions remain unresolved.   This injury can be redressed by the requested relief of a declaratory judgment

WHEREFORE, Plaintiffs KEEP CHICAGO LIVABLE, BENJAMIN THOMAS WOLF, SUSAN MALLER, DANIELLE MCCARRON and ANTOINETTE WONSEY respectfully request and pray for a declaratory judgment that the Shared Housing Ordinance be stricken as unconstitutional, unenforceable and void *ab initio* in violation of the First Amendment as a whole, and for such other and further relief as is just and equitable.

## COUNT IV

## DECLARATORY JUDGMENT
## FOURTEENTH AMENDMENT – VOID FOR VAGUENESS

72. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 40 as if fully set forth herein.

73. Section 1 of the Fourteenth Amendment to the United States Constitution states in pertinent part: "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the Untied States, nor shall any State deprive any person of life, liberty, or property, without due process of law, or deny to any person within its jurisdiction the equal protection

of the laws."

74. A law that does not provide the kind of notice that would enable persons or ordinary intelligence to understand what conduct is prohibited, that is so prolix as to be incomprehensible, or that authorizes arbitrary or even discriminatory enforcement, is impermissibly vague in violation of the rights of all citizens to Due Process provided under the Fourteenth Amendment.

75. The Shared Housing Ordinance is too long, vague and prolix for a person of common intelligence to understand.

76. Additionally, the Shared Housing Ordinance contains an exception for "guest suites" that would seemingly apply to any host who is selective about which guests to invite and when, and is therefore not making the space available to members of the general public, meaning that a host could reasonably believe that the Shared Housing Ordinance does not apply at all to him or her.

77. The Shared Housing Ordinance does not define what it means for a host, who lives in the dwelling unit as his or her primary or secondary residence, to "provide food" to a guest.

78. If providing food means having food available, then hosts must make substantial, impracticable renovations to their home to meet the health code standards for commercial kitchens, including installing grease traps, vents, dishwashing machines and a separate hand-wishing sink in the kitchen area. Additionally, a host that has food in the refrigerator would have to get rid of his or her dog, cat or other pet, because the Food Code prohibits such animals in the food preparation area.

79. Further, the Food Code states that "[n]one of the operations connected with a food establishment shall be conducted in any room used as living or sleeping quarters." Thus, arguably, if a host has food in his or her refrigerator, the host cannot actually host a guest under the Shared Housing ordinance.

80. The Shared Housing Ordinance does not define which portions of the 68-page Food Code

are "applicable" to a Shared Housing Unit or Vacation Rental that "provides food" to a guest.

81. A vacation rental license (or a shared housing unit registration) can be revoked if there are three or more "objectionable conditions".

82. An "objectionable condition" includes "excessive loud noise," which means "any noise, generated from within *or having a nexus to* the rental of the shared housing unit, *between 8:00 p.m. and 8:00 a.m.* that is louder than the average conversational level at a distance of 100 feet or more, measured from the property line of the vacation rental.

83. The standard of conduct – noise that is louder than the "average conversational level at a distance of 100 feet *or more*" - is incomprehensible, unless it simply means any noise, not only because there is no such thing as an "average conversational level," but also because the "average conversational level" at an infinite distance (100 feet or more) is imperceptible – even at 100 feet, it is most likely imperceptible.

84. The Shared Housing Ordinance makes it illegal for a host to list a room or a home on a home sharing site depending on the listing activities of his or her neighbors, even though the neighbors may be listing on a different home sharing site and most likely are anonymous to each other.

85. For owners in 3-flats (two to four dwelling unit buildings), only one such host may list at any given time.

86. For owners in high-rise buildings (5 or more dwelling units), the maximum cap for listings is 6 units, or 25% of the number of dwelling units, whichever is less.

87. Once this maximum cap is exceeded, all listings are deemed illegal and subject to $3,000 per day fines.

88. The City of Chicago has stated that it will enforce these "maximum caps" on a first-

come, first-served basis. However, because all shared housing units and shared housing hosts will be "bulk registered," there is no way for the City to enforce "maximum caps" where a particular building is already oversubscribed at the time of bulk registration.

89. Further, there is no public, central website or information source where a host can determine how many other listings there are at any given time in the building, on the myriad of different internet platforms that facilitate home sharing.

90. There is a substantial and continuing controversy between plaintiff KEEP CHICAGO LIVABLE and the CITY OF CHICAGO as to the constitutionality and thus enforceability of material portions of the Shared Housing Ordinance. This injury can be redressed by the requested relief of a declaratory judgment.

91. There is also a substantial and continuing controversy between plaintiff BENJAMIN THOMAS WOLF, SUSAN MALLER, DANIELLE MCCARRON and ANTOINETTE WONSEY, on the one hand, and the CITY OF CHICAGO, on the other hand, as to the meaning and constitutionality and thus enforceability of material portions of the Shared Housing Ordinance.

92. This injury can be redressed by the requested relief of a declaratory judgment.

WHEREFORE, Plaintiffs KEEP CHICAGO LIVABLE, BENJAMIN THOMAS WOLF, SUSAN MALLER and ANTOINETTE WONSEY respectfully request and pray for a declaratory judgment that the aforementioned provisions of the Shared Housing Ordinance be stricken as unconstitutional, unenforceable and void *ab initio* as overbroad and impermissibly vague in violation of the Due Process Clause in the Fourteenth Amendment of the United States Constitution, and that injunctive relief be entered against the City of Chicago from enforcing these provisions, that reasonable attorneys' fees and costs be awarded as authorized under 42 U.S.C. 1988, and for such other and further relief as is just and equitable be entered

## COUNT V

### DECLARATORY JUDGMENT
### SUBSTANTIVE DUE PROCESS CLAUSE OF 14th AMENDMENT – RIGHT TO INTIMATE AND EXPRESSIVE ASSOCIATION

93. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 40 as if fully set forth herein.

94. As the Supreme Court held in *Roberts v. United States Jaycees*, 468 U.S. 609 (1984), "because the Bill of Rights is designed to secure individual liberty, it must afford the formation and preservation of certain kinds of highly personal relationships a substantial measure of sanctuary from unjustified interference by the State…." *Id.* at 618.

95. The freedom of association is thus a fundamental liberty protected by the Constitution. This associational freedom is understood in two distinct senses: intimate and expressive association.

96. Intimate association refers to those "choices to enter into and maintain certain intimate human relationships" and are afforded protection "because the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme." *Id.* at 618.

97. The right to intimate association is a fundamental liberty interest protected under the "liberty" portion of the substantive due process clause of the Fourteenth Amendment, meaning that any infringements of this right must be evaluated under the strict scrutiny test.

98. Although the archetype of an "intimate associational relationship" involves traditional relationships involving marriage and the family, *id*. at 619, the relationships protected under the rubric of "intimate association" are not limited to traditional nuclear relationships. *See Board of Directors of Rotary International v. Rotary Club of Duarte*, 481 U.S. 537, 545 (1987) ("Of course, we have not held that constitutional protection is restricted to relationships among family members.")   Rather, the constitutional protection afforded to intimate or private relationships is considered along a "spectrum

from the most intimate to the most attenuated of personal attachments." *Roberts*, 468 U.S. at 620; *Rotary Club*, 481 U.S. at 546. Relevant factors to consider include whether the relationship has the attributes of "relative smallness, a high degree of selectivity in decisions to begin and maintain the affiliation, and seclusion from others." *Roberts*, 486 U.S. at 620.

99. The bonds of personal friendship that naturally arise between an Airbnb host and guest falls within the constitutional protected freedom of intimate association.

100.    Airbnb hosts and guests are part of a community that shares a common set of social norms and values. Airbnb hosts advertise themselves and their homes in a highly personal manner, including their picture, a description of themselves, pictures of their home and a description of their home and neighborhood. Airbnb guests browse through listings looking not only at price figures, location and availability, but make their own selections based upon a number of subjective and selective criteria involving the host and the host's home. "Reviews" by fellow Airbnb members are of both host and guest play an important if not determinative role in the selection process on both sides.

101.    The host also exercises selectivity regarding the guest. Once a guest finds a listing and a host that are appealing, the guest must "request to book" and then write a brief narrative or message about the guest's visit and interest in the host and the host's home, as well as ask questions. Upon receiving a request to book, the host has the full name of the guest – and can "google" or perform a background check on this guest – and will view the potential guest's personal profile, the potential guest's reviews and the guest's messages, in order to decide whether or not to extend an invitation to this particular guest to stay in the host's home.

102.    Plaintiff MONICA WOLF uses Airbnb to form close, personal bonds with her local hosts when she visits Chicago. Although she visits Chicago for both social and professional reasons,

her selection of where to stay in Chicago is governed by social and personal considerations, and she uses Airbnb for the purpose of pursing her passion for bourbon education and advocacy – for personal reasons, essentially. The Shared Housing Ordinance directly and substantially burdens her freedom to use Airbnb in this manner, and thus unjustifiably interferes with her rights to intimate association.

103.     Because Plaintiff JOHN DOE does not have friends in Chicago, he has no other practical outlet other than Airbnb to learn about buildings or neighborhoods from actual residents on a first-hand basis. Plaintiff DOE's ability to meet and associate personally with local Chicagoans in the particular buildings and neighborhoods to which he would like to consider moving is directly and substantially burdened by the "Prohibited Buildings List".

104.     A second and distinct type of "association" protected by the Constitution is the right to "expressive association," or the right to associate for the purpose of engaging in those activities protected by the First Amendment – speech, assembly, petition for the redress of grievances, and the exercise of religion.

105.     In this case, plaintiffs BENJAMIN THOMAS WOLF and ANTOINETTE WONSEY in particular have strong independent claims for why their expressive rights are inhibited by the prohibitions and regulations in the Shared Housing Ordinance.

106.     Benjamin is an international psychology Ph. D candidate who enjoys hosting international guests in furtherance of his scholarship and research. Such academic scholarship and research is protected expressive activity under the First Amendment, and Benjamin has thus a fundamental liberty interest in protecting his right to expressive association in furtherance of his First Amendment rights. Benjamin's right to expressive association is thus directly and substantially burdened by the Shared Housing Ordinance.

107.     Benjamin is also the President of Keep Chicago Livable. Benjamin's ability to serve

in this role as a host advocate depends on his ability to host Airbnb guests and share their experiences about using Airbnb as well as their own local experiences with regulations on shared housing.

108.    Benjamin is also a candidate for national political office. Benjamin's ability to understand the needs of his constituency – which includes a variety of progressive causes of national interest – depends on his ability to interact at a deeply intimate and personal level with the people he would like to represent (even if they are not specifically in his district). Airbnb guests who share his political beliefs and support his political platform are a perfect constituency for him, and he is denied in his ability to reach out to this constituency in the same way that a politician barred from speaking at a conference or hosting a private, $1,000 a plate dinner, is inhibited.

109.    Antoinette similarly has a First Amendment right to speak and express her views as to the relatively safety, beauty or livability of her much-maligned neighborhood of Englewood, on the South Side of Chicago. There is no better way – or other way – for Antoinette to change hearts-and-minds other than by inviting open-minded travelers from outside of Chicago to stay for a night, a weekend or even a week or two, in Englewood, and see for themselves. Airbnb provides her with the outlet to find these guests, and provides her with an infrastructure of support to host these guests. Her right to expressive association is thus directly and substantially burdened by the Shared Housing Ordinance.

110.    The City of Chicago lacks a compelling or substantial state interest in infringing upon these freedoms of association.

111.    The Shared Housing Ordinance does not directly advance the City of Chicago's governmental interest, and is not narrowly tailored or the least restrictive method of achieving that interest.

112.    There is a substantial and continuing controversy between plaintiff KEEP CHICAGO

LIVABLE and the CITY OF CHICAGO as to the constitutionality and thus enforceability of material portions of the Shared Housing Ordinance. This injury can be redressed by the requested relief of a declaratory judgment.

113.    There is also a substantial and continuing controversy between plaintiff BENJAMIN THOMAS WOLF, ANTOINETTE WONSEY, and MONICA WOLF, on the one hand, and the CITY OF CHICAGO, on the other hand, as to the meaning and constitutionality and thus enforceability of material portions of the Shared Housing Ordinance.

114.    This injury can be redressed by the requested relief of a declaratory judgment.

WHEREFORE, Plaintiffs KEEP CHICAGO LIVABLE, BENJAMIN THOMAS WOLF, ANTOINETTE WONSEY, MONICA WOLF and JOHN DOE respectfully request and pray for a declaratory judgment that the aforementioned provisions of the Shared Housing Ordinance be stricken as unconstitutional, unenforceable and void *ab initio* in violation of the Due Process Clause in the Fourteenth Amendment of the United States Constitution, and that injunctive relief be entered against the City of Chicago from enforcing these provisions, that reasonable attorneys' fees and costs be awarded as authorized under 42 U.S.C. 1988, and for such other and further relief as is just and equitable be entered

## COUNT VI

### DECLARATORY JUDGMENT
### EQUAL PROTECTION – 14th AMENDMENT
### (Susan Maller and Danielle McCarron: Guest Suites)

115.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 40 as if fully set forth herein.

116.    Section 1 of the Fourteenth Amendment to the United States Constitution states in pertinent part: "No state shall … deny to any person within its jurisdiction the equal protection of the

laws."

117.    The Shared Housing Ordinance excludes the term "guest suites" from the definitions of "vacation rental" and "shared housing unit." Because "guest suites" are excluded from the definitions of "vacation rental" and "shared housing unit," they are unregulated by the Shared Housing Ordinance (or by any other known municipal ordinance).

118.    The amended definition of "guest suites" is: "a dwelling unit that is available for rent or for hire for transient occupancy solely by the invitees or family members of residents of the building which contains the dwelling unit, and is not offered, advertised or made available for rent or hire to members of the general public." Shared Housing Ord. Sec. 4-6-300(a).

119.     "Guest Suites" are offered as amenities by luxury apartment rental high-rise owners to their tenants, usually as an accommodation to the small size of the apartments being rented to tenants. Tenants in such buildings can invite their friends or family – or anyone – to stay with them in the same building, but in a "guest suite" owned by management, for a fee that (upon information and belief) is paid to management or charged to tenant by management.

120.    A sampling of "guest suite" listings or references publicly available on the internet is attached hereto as ***Exhibit 3***.

121.    Plaintiff Susan Maller is a tenant at Atwater Apartments, 355 E. Ohio Street.

122.    Susan has used Airbnb in the past and would like to host Airbnb guests of her selective choosing in her own apartment unit.

123.    Atwater Apartments has a "guest suite" that it offers as an amenity to its residents. *See* Ex. 3

124.    Susan could theoretically invite Monica to stay with her in her building for Fourth of July Weekend, for a fee paid by Monica, but only if Monica paid the fee to management and only if

Monica slept in the "guest suite" instead of with Susan in Susan's apartment unit in the same building.

125. Plaintiff Danielle McCarron was until very recently a tenant at Hubbard Place, 360 W. Hubbard Street.

126. Danielle would have liked to have maintained a listing on Airbnb as a potential host for guests in her apartment but the building management at Hubbard Place placed the building on the City's "Prohibited Buildings List."

127. Hubbard Place has a "guest suite" that it offers as an amenity to its residents. *See* Ex. 3.

128. The City of Chicago does not have a legitimate governmental interest, let alone a substantial or compelling governmental interest, in this legislative classification distinguishing individual Airbnb hosts from corporate owners of "guest suites."

129. The City of Chicago has no legitimate governmental interest, let alone a substantial or compelling governmental interest, in dictating to Susan or Danielle where their guests must sleep or who to pay.

130. The City of Chicago has no legitimate governmental interest, let alone a substantial or compelling governmental interest, in burdening or prohibiting Susan and Advertising from advertising this short-term rental opportunity in her own apartment, while allowing Atwater Apartments and Hubbard Place to openly market their own "guest suites" to the same guest, for the same fee, to stay over the same short-term period of time, in the same building.

131. There is a substantial and continuing controversy between plaintiff KEEP CHICAGO LIVABLE and the CITY OF CHICAGO as to the constitutionality and thus enforceability of material portions of the Shared Housing Ordinance. This injury can be redressed by the requested relief of a declaratory judgment.

132.    There is also a substantial and continuing controversy between plaintiffs SUSAN MALLER and DANIELLE MCCARRON, on the one hand, and the CITY OF CHICAGO, on the other hand, as to the meaning and constitutionality and thus enforceability of material portions of the Shared Housing Ordinance, given the "guest suite" exception..

133.    This injury can be redressed by the requested relief of a declaratory judgment.

WHEREFORE, Plaintiffs KEEP CHICAGO LIVABLE, SUSAN MALLER and DANIELLE MCCARRON respectfully request and pray for a declaratory judgment that the aforementioned provisions of the Shared Housing Ordinance be stricken as unconstitutional, unenforceable and void *ab initio* as in violation of the Equal Protection Clause in the Fourteenth Amendment of the United States Constitution, and that injunctive relief be entered against the City of Chicago from enforcing these provisions, that reasonable attorneys' fees and costs be awarded as authorized under 42 U.S.C. 1988, and for such other and further relief as is just and equitable be entered

### COUNT VII

### DECLARATORY JUDGMENT
### EQUAL PROTECTION – 14th AMENDMENT
### (Benjamin Wolf: Hotels)

134.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 40 as if fully set forth herein.

135.    Section 1 of the Fourteenth Amendment to the United States Constitution states in pertinent part: "No state shall … deny to any person within its jurisdiction the equal protection of the laws."

136.    The Shared Housing Ordinance re-defines "hotel accommodations" to mean "a room or rooms in any building or structure kept, used or maintained as or held out to the public to be an inn, motel, hotel, apartment hotel, lodging house, bed-and-breakfast establishment, vacation rental, as

defined in Section 4-6-300, <u>shared housing unit as defined in Section 4-14-010</u>, dormitory or similar place, where sleeping, rooming, office, conference or exhibition accommodations are furnished for lease or rent, whether with or without meals." Chi. Mun. Ord. § 3-24-020(A)(4).

137. The Shared Housing Ordinance excludes the term "hotels" from the definitions of "vacation rental" and "shared housing unit." Thus, "hotels" are not required to comply with the restrictions of the Shared Housing Ordinance.

138. The regulation governing "hotels" is two (2) pages long, and a copy is attached hereto as *Exhibit 4*. By comparison, the regulation governing shared housing hosts is 57 pages long.

139. Benjamin has used Airbnb in the past as a host, and would like to use Airbnb to find guests again to stay in his guest room in his condominium unit. However, Benjamin is deterred from listing on Airbnb due to the burdens and prohibitions of the Shared Housing Ordinance. In particular, Benjamin is deterred from listing because of the $3,000 to $5,000 per day fines for violation of the Shared Housing Ordinance and the requirement that he comply with the Board of Health "Food Code" restrictions as he has typically has food in his house.

140. Because hotels do not have to comply with the restrictions of the Shared Housing Ordinance, and because both Benjamin and hotel operators "sell" the same "product" – i.e., beds for transient occupancy – the Shared Housing Ordinance discriminates against Benjamin and individuals like Benjamin.

141. The City of Chicago does not have a legitimate governmental interest, let alone a substantial or compelling governmental interest, in this legislative classification distinguishing individual Airbnb hosts from hotel owners.

142. The City of Chicago has no legitimate governmental interest, let alone a substantial or compelling governmental interest, in burdening or prohibiting Benjamin from advertising his short-

term rental opportunity in his own apartment, while allowing a hotel down the street to openly market its own rooms to the same guest, for the same fee, for the same period of time.

143.    There is a substantial and continuing controversy between plaintiff KEEP CHICAGO LIVABLE and the CITY OF CHICAGO as to the constitutionality and thus enforceability of material portions of the Shared Housing Ordinance. This injury can be redressed by the requested relief of a declaratory judgment.

144.    There is also a substantial and continuing controversy between plaintiff BENJAMIN THOMAS WOLF, on the one hand, and the CITY OF CHICAGO, on the other hand, as to the meaning and constitutionality and thus enforceability of material portions of the Shared Housing Ordinance, given the "hotel" exception..

145.    This injury can be redressed by the requested relief of a declaratory judgment.

WHEREFORE, Plaintiffs KEEP CHICAGO LIVABLE and BENJAMIN THOMAS WOLF respectfully request and pray for a declaratory judgment that the aforementioned provisions of the Shared Housing Ordinance be stricken as unconstitutional, unenforceable and void *ab initio* as in violation of the Equal Protection Clause in the Fourteenth Amendment of the United States Constitution, and that injunctive relief be entered against the City of Chicago from enforcing these provisions, that reasonable attorneys' fees and costs be awarded as authorized under 42 U.S.C. 1988, and for such other and further relief as is just and equitable be entered

Respectfully submitted,

KEEP CHICAGO LIVABLE, an Illinois not-for-profit corporation, and BENJAMIN THOMAS WOLF, SUSAN MALLER, DANIELLE MCCARRON, ANTOINETTE WONSEY, MONICA WOLF and JOHN DOE, individuals,

_____\s\ Shorge Kenneth Sato_____
One of their Attorneys

Shorge Sato
***Reda & Des Jardins, Ltd.***
125 South Clark Street, Floor 17
Chicago, Illinois 60654
(773) 206-7630
ARDC: 6278382
ssato@shoken-legal.com
shorge@rdlawyers.com