IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KEEP CHICAGO LIVABLE, an Illinois not-for-profit corporation, and BENJAMIN THOMAS WOLF, SUSAN MALLER, DANIELLE MCCARRON, ANTOINETTE WONSEY, MONICA WOLF and JOHN DOE, individuals, | ) ) ) ) ) ) ) ) | NO. 1: 16-cv-10371 |
| Plaintiffs, | ) ) ) | Hon. Judge Sara Ellis |
| v. | ) ) ) | **PLAINTIFFS' AMENDED MOTION FOR A PRELIMINARY INJUNCTION** |
| THE CITY OF CHICAGO, a Municipal corporation, | ) ) ) ) | |
| Defendant. | ) | |

**PLAINTIFFS' AMENDED MOTION FOR PRELIMINARY INJUNCTION**

NOW COME plaintiffs KEEP CHICAGO LIVABLE, an Illinois not-for-profit corporation ("KCL"), BENJAMIN THOMAS WOLF ("Benjamin"), SUSAN MALLER ("Susan"), DANIELLE MCCARRON ("Danielle"), ANTOINETTE WONSEY ("Antoinette"), MONICA WOLF ("Monica") and JOHN DOE ("Doe," and together with KCL, Benjamin, Susan, Danielle, Antoinette, and Monica, "Plaintiffs"), by and through their undersigned attorney, and hereby present their amended motion for a preliminary injunction pursuant to Federal Rule of Civil Procedure 65 against the City of Chicago's "Shared Housing Ordinance", as amended, and in support thereof, Plaintiffs incorporate by reference their Amended Complaint and Memorandum in Support of Amended Motion for Preliminary Injunction and state as follows:

**INTRODUCTION**

1. The gist of the original complaint and motion for preliminary injunction was that the City

of Chicago was making individuals sign a sworn attestation that they "reviewed and understood" a 57 page, dizzyingly complex Shared Housing Ordinance that the City itself did not understand and that contained a core syntax error – involving the definition of the "guest suite" exception – that rendered the entire law incomprehensible.

2. On or about December 14, 2016, Mayor Rahm Emanuel proposed an amendment to the Shared Housing Ordinance, that softened (but did not completely fix) this attestation requirement, by changing the language "reviewed and understood" to an acknowledgement that "listing, rental and operation of shared housing units is subject to those requirements."

3. When this proposed amendment was presented to the City of Chicago licensing committee on February 15, 2017, the City of Chicago orally presented a "substitute ordinance" amendment that further amended the proposed amendment by correcting the core syntax error in the definition of "guest suite" by changing the term "guest" (which was defined as a person who rented a vacation rental or shared housing unit) to the term "invitee."

4. On February 22, 2017, the City Council passed the amended amendment to the Shared Housing Ordinance.

5. On February 23, 2017, in light of this amendment, this Honorable Court ordered that Plaintiffs file an amended complaint and a new motion for preliminary injunction by February 27 and February 28, 2017, respectively, to address the City's argument that as amended, the previously fully briefed and argued motion for preliminary injunction was "moot."

6. On February 27, 2017, the original plaintiffs – and five new individual plaintiffs (including one John Doe) – filed an amended complaint, substantially narrowing the scope of the remaining dispute to issues arising under the First and Fourteenth Amendment to the United States Constitution. In addition to advancing and supplementing the previously briefed and argued claims,

the plaintiffs now assert new claims based on: (1) the freedom of intimate and expressive association under the substantive Due Process clause of the Fourteenth Amendment and (2) the Equal Protection Clause of the Fourteenth Amendment.

7. The City's amendment to the Shared Housing Ordinance does not "moot" the original motion for preliminary injunction, and in fact, demonstrates why this implementation of this law must be enjoined pending a full hearing on the merits.

## OVERVIEW OF CHANGES

### A. Changes In The Law

8. On January 13, 2017, the City compiled and published its "Prohibited Buildings List" containing over 1,000 buildings and 100,000 apartments and condominium units. [Am. Cmplt. ¶ 4]. If a building puts itself on the City's "Prohibited Buildings List," no resident of that building can put up or even maintain a mere listing as a host on a shared housing intermediary website such as Airbnb. SHO, and Airbnb is required to notify the host to take down any such listings. SHO §§ 4-6-300(c)(7); 4-13-260(a)(9); 4-14-020(d)(2). Any user of Airbnb that fails to take down a listing for a unit in a building on the "Prohibited Buildings List" is subject to penalties of up to $5,000 per day. SHO § 4-14-030(c).

9. On February 22, 2017, the City Council passed an amendment to the Shared Housing Ordinance that changed three provisions of the law:

> (a) **Warrant or subpoena required for guest registration records**. Sections 4-6-290, 4-6-300(f)(3) and 4-14-010(b)(9) require a host to maintain guest registration records for three years on file. Whereas originally, the law authorized a City official to inspect such records "upon request," the amendment now requires that such City official to obtain host consent, a warrant or a subpoena in order to view such records.

    (b) **Attestation requirement now an "acknowledgement."** Whereas originally, the law required that a shared housing host (as a condition to being registered in order to maintain a listing on Airbnb) sign an attestation under penalty of the Chicago False Statements Ordinance that the host had "reviewed and understood" the law, the amendment changed this requirement to require a host to "acknowledge that listing, rental, and operation of shared housing units is subject to those requiements."

    (c) **Guest suites**. Under the law, even as amended, "guest suites" are excluded from the definition of both "vacation rental" and "shared housing unit." SHO § 4-6-300(a); 4-14-010. Originally, the term "guest suites" was defined as "a dwelling unit that is available for rent or for hire for transient occupancy solely by the guests or family members of the building which contains the dwelling unit, and is not offered, advertised or made available for rent or hire to members of the general public." SHO § 4-6-300(a). As amended, the term "invitee" was substituted for the term, "guest."

### B. New Allegations

10. The original complaint was 73 pages long (sans exhibits). The current complaint is 28 pages long (sans exhibits).

11. The original complaint contained ten counts, including three separate claims under the First Amendment, and constitutional claims under the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution. The amended complaint drops all but the first three First Amendment claims and the Fourteenth Amendment – Due Process / Vagueness challenge, and adds two new claims separated into three additional counts, as described below.

12. Pertinent new allegations include, *inter alia*:

    (a) "Airbnb has the deepest and broadest pool of vetted and insured 'guests' and

reliable 'hosts' who share the community's norms and values." [Am. Cmplt. ¶ 33]

(b) "It is impossible for a host to create a listing on Airbnb – and thus, impossible for a person wishing to host a guest from this deep, vetted and insured guest pool – without including and maintaining a price term. Accordingly, the ability of a host to meet a guest from this deep, insured, globally popular guest pool is inextricably intertwined with the communication of a price term through an Airbnb listing." [Am. Cmplt. ¶ 35].

### C. New Claims / Plaintiffs

13. The Amended Complaint contains two new claims separated into three additional counts. New Count V alleges that the Shared Housing Ordinance, as amended, violates the Fourteenth Amendment substantive due process liberty of the freedom of intimate and expressive association. The "intimate association" claim is brought on behalf of new plaintiffs MONICA WOLF and JOHN DOE, who each reside outside of Chicago but use Airbnb to form close, personal bonds with their selected host.

14. Monica, a bourbon enthusiast and member of the Bourbon Women Association, uses Airbnb in Chicago to pursue her passion for bourbon advocacy and education among women, and her ability to do so using Airbnb is directly and substantially impeded by the prohibitions on alcohol in Sections 4-6-300(g)(6) and 4-14-050(d). [Am. Cmplt. ¶ 102].

15. John Doe (whose name has been withheld due to his pending immigration status) is a Canadian chartered accountant planning to move to downtown Chicago and uses Airbnb to network, make local friends and scout possible rental apartments or condominiums in the area to which he wishes to move. [Am. Cmplt. ¶ 103]. The Prohibited Buildings List directly and substantially interferes with his freedom to privately associate in this manner.

16. Count V also includes claims for infringement of the fundamental right to expressive association, or association in furtherance of protected First Amendment speech and expression. Plaintiff Benjamin Thomas Wolf is a Ph. D candidate in international psychology who enjoys hosting international guests to further his academic research – a protected First Amendment interest. [Am. Cmplt. ¶ 106; Dkt. No. 23-1, Exh. B, PageID #397]. He is also the President of Keep Chicago Livable, and uses Airbnb to meet like-minded individuals to educate them about Chicago's laws as well as learn about regulations and best practices in their own home cities or countries. [Am. Cmplt. ¶ 107]. He is also a candidate for the United States House of Representatives, and would like to use Airbnb for political reasons – to understand the needs of his constituency and educate himself about his positions, for instance. [Am. Cmplt. ¶ 108]

17. New plaintiff Antoinette Wonsey also has a freedom of expressive association claim. Antoinette – who has already submitted a sworn statement as part of plaintiffs' reply in support of their original motion for preliminary injunction [Dkt. No. 23-1, Exh. I, PageID#424] – uses Airbnb to change perceptions about the South Side of Chicago. [Am. Cmplt. ¶ 109].

18. New Counts VI and VII advance two similar Equal Protection claims. Count VI is brought on behalf of Keep Chicago Livable and two its members, Susan Maller and Danielle McCarron. New plaintiff Susan Maller – who also previously submitted a sworn statement [Dkt. No. 23-1, Exh. K, PageID#428] – lives in a luxury high-rise apartment called "Atwater Apartments." [Am. Cmplt. ¶ 121]. Atwater Apartments maintains and advertises a "guest suite." [Am. Cmplt. ¶ 123]. Danielle until recently lived in the Hubbard Place luxury apartments, that not only have a "guest suite" but are also on the City's Prohibited Buildings List. [Am. Cmplt. ¶¶ 125-127].

19. Susan and Danielle bring claims under the Equal Protection Clause of the Fourteenth Amendment, alleging that the distinction between "shared housing units" and "guest suites" is wholly

irrational and arbitrary, because each could have hosted the same guest, for the same weekend, for the same fee, in the same building, but the law requires that guest to sleep in one room as opposed to another. [Am. Cmplt. ¶¶ 12, 117, 119-130].

20. New Count VII is a second Equal Protection claim brought by Keep Chicago Livable and Benjamin Thomas Wolf, arguing that the Shared Housing Ordinance draws and arbitrary and wholly irrational distinction between "hotels" and "shared housing units," both of which are classified as "hotel accommodations" under the Shared Housing Ordinance. [Am. Cmplt. ¶¶ 12, 137-140]

### ARGUMENT SUMMARY

21. Federal courts apply a two-step analysis in considering motions for preliminary injunctions. First, federal courts determine if there is (1) a likelihood of success on the merits; (2) a threat of irreparable harm; and (3) an inadequate remedy at law. If those conditions are satisfied, the court must then (4) balance the hardships, and (5) consider the impact on public interest. *Cavel Int'l v. Madigan*, 500 F.3d 544, 547 (7th Cir. 2007) (applying "sliding scale" analysis); *Promatek Indus. v. Equitrac Corp.*, 300 F.3d 808, 811 (7th Cir. 2002) (affirming grant of preliminary injunction).

22. The "threshold is low" for granting a preliminary injunction in federal court. *Roland Machine Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 387 (7th Cir. 1984). "It is enough that 'the plaintiff's chances are better than negligible." *Brunswick Corp. v. Jones, Jr.*, 784 F.2d 271, 275 (7th Cir. 1986) (affirming grant of preliminary injunction). The standard "does not require a finding that it is more likely than not that one side will prevail." *Oxford Capital Illinois, L.L.C. v. Sterling Payroll Fin., L.L.C.,* 2002 U.S. Dist. LEXIS 4372, at *12 n.2 (N.D. Ill. Mar. 15, 2002)

**I.     Plaintiffs Demonstrate A Clear Showing Of A Substantial Likelihood Of Success On The Merits.**

23. As can be seen from the Amended Complaint, Plaintiffs believe that fundamental rights and interests are at issue and are being violated by the Shared Housing Ordinance, as amended.

**However, there is a much easier basis for decision,** and a preliminary injunction, that does not require that this Honorable Court find that a fundamental liberty interest or right is at stake: the Equal Protection Clause.

24. Even if Airbnb is deemed to be no more than a pure commercial, quid-pro-quo transaction ("money for bed"), and even if that means that Airbnb hosts are merely purveyors of "hotel accommodations" on par with hotels and bed-and-breakfast operators, the Shared Housing Ordinance is unconstitutional because it regulates Airbnb hosts much more severely than it does those other purveyors of hotel accommodations that are similarly situated, while also letting certain owners and operators (owners of "guest suites") of hotel accommodations continue to advertise and operate without any regulation whatsoever. *See* Am. Cmplt. ¶ 12 (Chart).

25. Additionally, Plaintiffs Keep Chicago Livable, Monica Wolf, John Doe, Benjamin Thomas Wolf and Antoinette Wonsey challenge the Shared Housing Ordinance as impacting their fundamental liberty interest in intimate and/or expressive association under the First and Fourteenth Amendment to the United States Constitution.

26. Finally, the new allegations in the Amended Complaint were not in any way "mooted" by the amendment passed to the Shared Housing Ordinance. Rather, this amendment did not go far enough, and merely created new issues under the First and Fourteenth Amendment.

27. The City cannot require individuals to sign an acknowledgement that the listing, rental and operation of shared housing units is subject to the requirements of a law that is presently the subject of two facial constitutional challenges in both federal and state court.

28. A person could reasonably disagree with the City's assessment of the merit of those two lawsuits; regardless, as has been the case since *Marbury v. Madison*, 5 U.S. 137 (1803), "[i]t is emphatically the province and duty of the judicial department to say what the law is." *Id.* at 177.

29. Further, the new facts alleged (which were previously in the record) show that, in fact, Airbnb hosts do not have a real choice when it comes to listing a price for guests – that is a requirement by Airbnb, Inc. Thus, their ability to interact socially with the deep, vetted and insured Airbnb guest pool is inextricably intertwined with their "commercial speech."

>   **II.   Plaintiffs Will Suffer Irreparable Harm And Have No Adequate Remedy At Law If The Shared Housing Ordinance Is Allowed To Go Into Effect Pending The Merits, And The Balance Of Harms Favors A Stay Pending A Decision On The Merits.**

30. When a party seeks a preliminary injunction against a potential First Amendment violation, the likelihood of success on the merits will often be the determinative factor. *Joelner v. Village of Washington Park, Illinois*, 378 F.3d 613, 620 (7th Cir. 2004). "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable constitutes irreparable injury.'" *Id.* at 620 (quoting in part *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion). Thus, "the 'quantification of injury is difficult and damages are therefore not an adequate remedy.'" *ACLU v. Alvarez*, 679 F.3d 583, 589 (7th Cir. 2012).

31. There is no urgency for this law to go into effect immediately – the City already agreed to ta 3 month stay, and actually legislated a 6 month stay after they passed this law. A few more weeks or months will not injure the City or the public interest in any material way.

32. On the other hand, "if the moving party establishes a likelihood of success on the merits, the balance of harms normally favors granting preliminary injunctive relief because the public interest is not harmed by preliminarily enjoining the enforcement of a statute that is probably unconstitutional." *Id.* at 589-590.

WHEREFORE, for the foregoing reasons, and for the reasons set forth in the Amended Complaint and the memorandum of law filed contemporaneously herewith, plaintiffs KEEP CHICAGO LIVABLE, BENJAMIN THOMAS WOLF, SUSAN MALLER, DANIELLE MCCARRON,

ANTOINETTE WONSEY, MONICA WOLF, and JOHN DOE respectfully move that this Honorable Court: (1) extend the stay on the implementation and effective date of the Shared Housing Ordinance, as amended, until an evidentiary hearing can be held on this instant Motion; (2) enter a preliminary injunction against the enforcement and effective date of the Shared Housing Ordinance, as amended, including but not limited to the Prohibited Buildings List and the prohibition on and regulation of the service of alcohol and food, and the "guest suite" exception, pending a ruling on the merits of this case; (3) grant an award of reasonable attorneys' fees and costs to Plaintiffs pursuant to 42 U.S.C § 1988 and (4) grant such other and further relief as is just and equitable.


Dated:  February 28, 2017                               Respectfully submitted,

                                                        KEEP CHICAGO LIVABLE, et al.

                                                         \s\ Shorge Sato_____


Shorge Sato
Reda & Des Jardins
Shoken Legal, Ltd.
125 South Clark Street
Suite 1700
Chicago, Illinois 60603
(312) 818-4146
shorge@rdlawyers.com
ARDC 6278382